No. 21-30690

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JASON BOYET,
*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CR-00051

_____

**APPELLANT'S BRIEF**

_____

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

SAMANTHA J. KUHN
Assistant Federal Public Defender

Office of the Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

## CERTIFICATE OF INTERESTED PERSONS

*United States v. Jason Boyet*
No. 21-30690

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  *Defendant-Appellant:* Jason Boyet

2.  *Counsel for Defendant-Appellant:* Federal Public Defender Claude J. Kelly and Assistant Federal Public Defender Samantha J. Kuhn.

    *Former Counsel for Defendant-Appellant*: Jeffrey David Hufft, James Allen Williams, and Rachel I. Connor.

3.  *Counsel for Plaintiff-Appellee:* United States Attorney Duane A. Evans; Assistant United States Attorneys Kevin G. Boitmann, Diane Hollenshead Copes, and Jordan Samuel Ginsburg.

    *Former Counsel for Plaintiff-Appellee*: Former United States Attorney Peter Strasser; Assistant United States Attorney Alexandra Triana Giavotella

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: June 24, 2022

ii

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Jason Boyet respectfully requests oral argument in this appeal, which arises from a sentencing proceeding in which the district court misapplied Fifth Circuit law and misapprehended its own sentencing authority in applying several sentencing enhancements that dramatically increased Mr. Boyet's Guidelines range. Additionally, one of the enhancements was revised by the Sentencing Commission in 2016 and is the subject of actively developing law. Accordingly, given the number and complexity of the legal issues in this case, oral argument would facilitate this Court's resolution of Mr. Boyet's appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES .................................................................................. vi

STATEMENT OF JURISDICTION ........................................................................ 1

STATEMENT OF THE ISSUES ............................................................................. 2

STATEMENT OF THE CASE ................................................................................. 3

SUMMARY OF THE ARGUMENT ..................................................................... 11

ARGUMENT ........................................................................................................ 12

    I.      The district court erred in its interpretation and application of the Sentencing Guidelines, mandating resentencing. ............................... 12

           A.      Standard of Review ................................................................ 12

           B.      The district court procedurally err in failing to recognize its authority to depart from the Guidelines based on policy disagreements. ........................................................................ 12

           C.      The district court legally and factually erred in applying the distribution-for-value enhancement to Mr. Boyet's Guidelines calculation. ........................................................... 13

    II.     The district court abused its discretion by broadening the cohabitation restriction to include a dating restriction in the written judgment ................................................................................... 22

           A.      Standard of Review ................................................................ 22

            B.      The district court abused its discretion by issuing a written judgment that conflicted with its oral pronouncement, requiring correction. ................................................................ 23

CONCLUSION ..................................................................................................... 25

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Kimbrough v. United States*, 552 U.S. 85 (2007) ...................................................5, 13

*Pepper v. United States*, 562 U.S. 476 (2011) ..........................................................13

*Peugh v. United States*, 569 U.S. 530 (2013) ...........................................................13

*Spears v. United States*, 555 U.S. 261 (2009)...........................................................13

*United States v. Acquaye*, 452 F.3d 380 (5th Cir. 2006) ..........................................12

*United States v. Bigelow*, 462 F.3d 378 (5th Cir. 2006)............................................23

*United States v. Burns*, 526 F.3d 852 (5th Cir. 2008) ..............................................13

*United States v. Dedual*, 760 F. App'x 339 (5th Cir. 2019)......................................15

*United States v. Diggles*, 957 F.3d 551 (5th Cir. 2020)............................................24

*United States v. Furzland*, 751 F. App'x 568 (5th Cir. 2019) ..................................16

*United States v. Halverson*, 897 F.3d 645 (5th Cir. 2018) .............................. passim

*United States v. Hennings*, 23 F.4th 820 (8th Cir. 2022).........................................20

*United States v. Martinez*, 250 F.3d 941 (5th Cir. 2001)..........................................23

*United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020) ................................ 22, 23

*United States v. Mireles*, 471 F.3d 551 (5th Cir. 2006)..................................... 23, 24

*United States v. Montgomery*, 978 F.3d 166 (5th Cir. 2020).....................................12

*United States v. Morehouse*, 34 F.4th 381 (4th Cir. 2022)........................ 16, 17, 18

*United States v. Oliver*, 919 F.3d 393 (6th Cir. 2019)....................................... 19, 20

*United States v. Phillips*, 842 F. App'x 908 (5th Cir. 2021) ....................................12

*United States v. Reyes-Mendoza*, 665 F.3d 165 (5th Cir. 2011).................................12

*United States v. Rivas-Estrada*, 906 F.3d 346 (5th Cir. 2018) ......................... 22, 23

*United States v. Sanghavi*, 776 F. App'x 248 (5th Cir. 2019)...................................24

*United States v. Story*, 439 F.3d 226 (5th Cir. 2006)................................................12

*United States v. Tang*, 718 F.3d 476 (5th Cir. 2013).................................................23

*United States v. Traufield*, 768 F. App'x 802 (10th Cir. 2019)................................20

*United States v. Vasquez-Puente*, 922 F.3d 700 (5th Cir. 2019) ..............................23

*United States v. Watts*, 834 F. App'x 907 (5th Cir. 2020)........................................23

*United States v. Woods*, 547 F.3d 515 (5th Cir. 2008) ............................................24

*United States v. Woods*, 799 F. App'x 284 (5th Cir. 2020)......................................24

## Statutes

18 U.S.C. § 2252(a)(2).................................................................................................3

18 U.S.C. § 2252(b)(1).................................................................................................3

18 U.S.C. § 3231 ..........................................................................................................1

18 U.S.C. § 3583 ........................................................................................................24

18 U.S.C. § 3742 ................................................................................1
28 U.S.C. § 1291 ................................................................................1

**SENTENCING GUIDELINES**

U.S.S.G. § 2G2.2 ...................................................................... passim
U.S.S.G. § 2G2.2(b)(3)(B) ....................................................... 5, 13, 16
U.S.S.G. § 2G2.2(b)(6) ..............................................................4
U.S.S.G. § 2G2.2(b)(7)(D) ..........................................................5

## STATEMENT OF JURISDICTION

This appeal is from the final judgment in a criminal case. The district court had jurisdiction over this criminal proceeding under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Appellant Jason Boyet filed a timely notice of appeal on November 8, 2021. ROA.215.

## STATEMENT OF THE ISSUES

(1)    Did the district court procedurally err in failing to recognize its authority to depart from the Guidelines based on policy disagreements?

(2)    Did the district court legally and/or factually err in applying the distribution-for-value enhancement to Mr. Boyet's Guidelines calculation?

(3)    Did the district court abuse its discretion by issuing a written judgment that conflicted with its oral pronouncement, requiring correction?

**STATEMENT OF THE CASE**

On September 23, 2020, Appellant Jason Boyet pleaded guilty to one count of distributing child pornography—*i.e.*, visual depictions of a minor engaging in sexually explicit conduct—in violation of 18 U.S.C. § 2252(a)(2), pursuant to a plea agreement with the government. ROA.59–60; ROA.115–16; ROA.225–33; ROA.117–22; ROA.1069–92. The charge carried a statutory range of five to twenty years of imprisonment. ROA.226; *see also* 18 U.S.C. § 2252(b)(1).

According to the written factual basis for the plea, Mr. Boyet joined a private chat group in an instant messaging mobile application "known to be a haven for purveyors of digital files depicting the sexual victimization of children." ROA.118. While logged into the private group, Mr. Boyet "stated he had custody and control of multiple minors." ROA.118. In subsequent conversations in the private chat room, between December 2019 and February 2020, he "distributed suggestive, but non-sexually explicit, pictures of who he claimed to be" those minors. ROA.118. Then, on February 10, 2020, he posted "a sexually explicit picture of a nude prepubescent female" who he claimed to be one of the minors. ROA.118.

Within hours of that post, law enforcement officers identified Mr. Boyet and his location and executed a search warrant on his residence. ROA.118–19. Mr. Boyet voluntarily interviewed with agents and admitted to accessing the social media application, taking pictures—including sexually explicit pictures—of two minor

children under his custody and control, and sharing the pictures with other users of the social media application. ROA.119. The factual basis further stated that government's evidence would show that Mr. Boyet took at least six sexually explicit pictures of one of the minors and sent the pictures to multiple individuals on various dates. ROA.119. The factual basis also stated that the government's evidence would establish that Mr. Boyet received at least 151 images and 195 videos depicting the sexual victimization of children on his phone through various means, including directly from other individuals with whom he communicated in the social media application. ROA.120–21.

Prior to sentencing, a U.S. Probation officer prepared a Presentence Investigation Report ("PSR") and calculated Mr. Boyet's Sentencing Guidelines range as 210 to 262 months. ROA.234–53 (draft PSR); ROA.517–36 (final PSR). Mr. Boyet had no criminal history, so his criminal history category was I. ROA.244. His offense level of 37 resulted from a base offense level of 22 pursuant to U.S.S.G. § 2G2.2, a 3-point reduction for acceptance of responsibility, and the application of several Guideline enhancements. ROA.243. Those enhancements included, in relevant part:

(1) a 2-level enhancement for using a computer to possess, transmit, receive, or distribute illicit material, or for accessing with intent to view such material, *see* § 2G2.2(b)(6);

(2)   a 5-level enhancement for possessing more than 600 illicit images, as defined by the Guideline, *see* § 2G2.2(b)(7)(D);[1] and

(3)   a 5-level enhancement for distributing illicit material "in exchange for any valuable consideration, but not pecuniary gain," *see* § 2G2.2(b)(3)(B).

ROA.243. Mr. Boyet objected to each of those enhancements. ROA.495–505; ROA.887.

With respect to the enhancements related to his use of a computer and the number of images he possessed, Mr. Boyet argued that both enhancements are inherent in nearly all distribution cases, are considered in the base offense level, and should not be used to increase his Guidelines range. ROA.500–01; ROA.887. He asserted that the computer enhancement "has been statistically established to be 'all but inherent' to the non-production child pornography offenses and has been repeatedly criticized by the United States Sentencing Commission," citing a 2014 Commission report indicating that "95% of defendants sentenced under § 2G2.2 received the enhancement for the use of a computer." ROA.500. He also cited the Supreme Court precedent authorizing district courts to depart from the Guidelines based on reasonable policy disagreements with them. ROA.501 (citing *Kimbrough v. United States*, 552 U.S. 85 (2007)).

In applying the § 2G2.2(b)(3)(B) distribution-for-value enhancement, the PSR asserted that "the defendant distributed to gain other photos and access to

---

[1] The Guideline commentary states that each video "shall be considered to have 75 images." § 2G2.2 cmt. n.6(B)(ii).

Website A" (i.e., the chat group/application). ROA.243, 239. Mr. Boyet disputed that claim, asserting that he did not post any pictures to gain access to the chat room or for the specific purpose of obtaining something of value in exchange. ROA.499. He argued that neither the factual basis nor any other evidence in the case supported the enhancement, explaining that the language of the enhancement had been revised in 2016 to require a specific agreement to make a direct exchange with another person and citing the new test for the enhancement articulated by this Court in *United States v. Halverson*, 897 F.3d 645 (5th Cir. 2018). ROA.496. That test requires the court to find that:

(1) the defendant agreed to an exchange with another person;

(2) the defendant knowingly distributed child pornography to that person;

(3) for the purpose of obtaining something of valuable consideration; and

(4) the valuable consideration came from that person.

*Halverson*, 897 F.3d at 652. Mr. Boyet argued that he should not receive the 5-level enhancement but instead should receive the 2-level enhancement that applies to defendants who "knowingly engaged in distribution, other than distribution described in sections (A) through (E)."[2] ROA.495–96; ROA.499–500.

---

[2] The other scenarios described in § 2G2.2(b)(3) include distribution for pecuniary gain (5-level increase) or distribution to a minor (5-level increase), with greater enhancements if material was distributed to a minor "to persuade, induce, entice, or coerce" the minor to engage in any illegal activity (6-level increase) or to travel to engage in prohibited sexual contact (7-level increase). *See* § 2G2.2(b)(3)(A), (C), (D), and (E).

In response to Mr. Boyet's objection, the government conceded that it did not have evidence of the content of Mr. Boyet's messages with other users in the chat group to show any agreement to make an exchange. ROA.508. Nevertheless, the government argued that the enhancement should apply. ROA.508. In support of its position, the government cited a statement in Mr. Boyet's factual basis that entry to the chat room "typically" required the posting of a file depicting the sexual victimization of children. ROA.553 (citing ROA.118). The government also asserted that Mr. Boyet acknowledged in an interview with law enforcement that he "sent both clothed and pornographic pictures . . . to groups as proof to stay in the groups and just in the course of being a group member." ROA.553 (quoting an FBI report at ROA.559). Finally, the government argued that "the temporal pattern of Boyet's exchanges . . . establish at least by a preponderance of the evidence that he distributed such files in exchange for [child sexual abuse material, or 'CSAM'] under the *Halverson* test." ROA.553. The government specifically identified four pairs of sequential transmissions by Mr. Boyet and other users, which it claimed to be evidence of exchanges. *See* ROA.553–55.

Mr. Boyet filed a reply to the government's argument on the distribution-for-value enhancement. ROA.875–83. He first disputed the government's claim that he distributed pictures "to gain admission to the chat room," asserting that the statement in the FBI agent's report is "overly vague" and clarifying that while he

sent *clothed* pictures of children to the groups "as proof [of access to children] to stay in the groups and just in the course of being a group member," he did not distribute CSAM to the group for admission. ROA.879–80. He also responded to each of the government's four examples, explaining how each pair of posts failed to meet the *Halverson* test. ROA.880–82. In particular, he argued with respect to each example that there was no evidence of an agreement between Mr. Boyet and the other user to engage in any exchange. ROA.880–82. Moreover, two of the four examples began with a post by another individual, and Mr. Boyet argued that the initiation of contact by the other person failed to satisfy the second step of the *Halverson* test. ROA.881–82. He also disputed that the image he sent in one of the four examples met the legal definition of child pornography. ROA.882.

At sentencing, the district court overruled the objections to the computer and number-of-images enhancements, dismissing Mr. Boyet's policy-based argument solely because he had "submitted no Fifth Circuit law permitting the sentencing court to refrain from imposing an applicable child-pornography enhancement in interpreting the guideline range merely because the court disagrees with the enhancement on policy grounds." ROA.1100.

With respect to the distribution-for-value enhancement, the district court agreed with the government that the *Halverson* criteria were satisfied, warranting the 5-level enhancement. ROA.1098. The court noted that the FBI report "repeatedly

used the word 'trade' and 'trading' to describe the activity conducted" in the chat room application, finding that it was "clear that the expressed purpose of these messages was to exchange child pornography." ROA.1098–99. The court also concluded that the sequential messages cited by the government showed that "on at least one occasion, the defendant sent child pornography to a group of recipients, and received child pornography in return," and the evidence also showed "one-on-one exchanges in which the defendant was sent child pornography and responded by sending child pornography." ROA.1099. The court concluded that those facts established by a preponderance of the evidence that Mr. Boyet "distributed child pornography with the specific purpose of obtaining something of valuable consideration in return, namely, other child-pornographic material and preferential access to child-pornographic material." ROA.1100.

The district court ultimately found it appropriate to sentence Mr. Boyet within his Guidelines range and sentenced him to 210 months in prison. ROA.1124, 208. In doing so, the court denied Mr. Boyet's request for a downward variance. *See* ROA.1121–24; *see also* ROA.884–930 (defendant's sentencing memorandum and request for downward variance). The court explained that it was imposing a sentence at the bottom of his Guidelines range "because of the history and characteristics of the defendant and the need for the sentence imposed to provide just punishment for the offense," noting that it was Mr. Boyet's "first criminal offense, and the

punishment provided by the bottom of the guideline range is already substantial." ROA.1124.

The court also sentenced Mr. Boyet to five years of supervised release to follow his term of imprisonment. ROA.209. Among several special conditions of supervision, the district court ordered that: "The defendant shall not cohabitate with anyone who has children under the age of 18." ROA.1128. That restriction mirrored verbatim the "Sex Offender Cohabitation Restriction" identified in Mr. Boyet's PSR. ROA.536. However, in the court's final written judgment, the cohabitation provision was broadened to include a dating prohibition as well, stating: "The defendant shall not *date or* cohabitate with anyone who has children under the age of 18." ROA.1004 (emphasis added).

Mr. Boyet filed a timely notice of appeal on November 8, 2021. ROA.215.

## SUMMARY OF THE ARGUMENT

The district court procedurally erred in applying multiple Guideline enhancements to Mr. Boyet's sentencing range. Two enhancements have been recognized as archaic and inherent in almost all distribution cases, but the district court refused to consider whether to remove or depart from the enhancements based on policy disagreements, erroneously believing that it lacked the authority to do so. A third enhancement was fairly recently amended by the U.S. Sentencing Commission, and the district court failed to properly implement the revised requirements, instead relying on a factual finding that would only be sufficient under the *previous* version of the Guideline. As a result of these improperly applied enhancements, Mr. Boyet's Guidelines range skyrocketed from 70–87 months to 210–262 months, and he was sentenced to the bottom of the higher Guidelines range: 210 months. The government cannot demonstrate harmlessness of any of these errors, and therefore resentencing is required.

Additionally, the district court issued a written judgment that conflicted with its oral pronouncement of Mr. Boyet's special conditions of supervised release, broadening a restriction that precludes him from cohabitating with anyone with minor children to add a restriction precluding him from *dating* anyone with minor children. Accordingly, the judgment must be revised to remove the dating restriction and thereby bring it into conformity with the oral pronouncement.

# ARGUMENT

I.    **The district court erred in its interpretation and application of the Sentencing Guidelines, mandating resentencing.[3]**

*A. Standard of Review.*

This Court reviews a preserved challenge to the interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Reyes-Mendoza*, 665 F.3d 165, 166 (5th Cir. 2011). Factual findings are reviewed for clear error. *United States v. Montgomery*, 978 F.3d 166, 167 (5th Cir. 2020).

*B. The district court procedurally err in failing to recognize its authority to depart from the Guidelines based on policy disagreements.*

"A district court commits procedural error . . . when it fails to appreciate its discretion under the Guidelines." *United States v. Phillips*, 842 F. App'x 908, 911 (5th Cir. 2021) (unpublished). In overruling Mr. Boyet's objections to the enhancements for using a computer and possessing more than 600 images, the district court failed to appreciate its authority and discretion to vary from the Guidelines based solely on policy disagreements. The court's only reason for rejecting Mr. Boyet's policy-based arguments was the fact that he had not cited any

---

[3] Mr. Boyet acknowledges that his plea agreement contains broad and restrictive appeal waivers that encompass his right "to challenge any United States Sentencing Guidelines determinations and their application" by the district court. *See* ROA.228. However, this Court cannot enforce an appeal waiver on its own motion, *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006), and has recognized that the government ordinarily urges waiver of appeal after the appellant has filed a brief, *United States v. Acquaye*, 452 F.3d 380, 382 (5th Cir. 2006). If the government ultimately seeks to enforce the appeal waivers in Mr. Boyet's plea agreement, Mr. Boyet respectfully reserves the right to challenge the validity and enforceability of that waiver.

Fifth Circuit law authorizing the court to "refrain from imposing" enhancements on that basis. But, as defense counsel cited below, *Supreme Court* precedent establishes that authority. *See Kimbrough*, 552 U.S. at 109. Indeed, the Supreme Court made clear in *Spears v. United States* that "the point of *Kimbrough*" was "a recognition of district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them[.]" 555 U.S. 261, 264 (2009); *see also Peugh v. United States*, 569 U.S. 530, 552 (2013) (Thomas, J., dissenting) ("[A] district court may freely depart from the range recommended by the Guidelines . . . based on 'policy disagreement' with the Guidelines themselves." (quoting *Spears*)); *Pepper v. United States*, 562 U.S. 476, 497 (2011). And, as this Court has held, a defendant "is entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* has announced." *United States v. Burns*, 526 F.3d 852, 862 (5th Cir. 2008). Accordingly, Mr. Boyet's judgment must be vacated and his case remanded for resentencing.

> **C.** *The district court legally and factually erred in applying the distribution-for-value enhancement to Mr. Boyet's Guidelines calculation.*

As the parties and court acknowledged below, the Sentencing Commission amended § 2G2.2(b)(3)(B) in 2016 to clarify its scope and resolve circuit conflict. The previous version imposed a 5-level enhancement if the offense involved "distribution for the receipt, *or expectation of receipt*, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (2015) (emphasis added). In 2016, the Commission revised the enhancement to make it apply to defendants who

"distributed *in exchange for* any valuable consideration, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (current) (emphasis added).

The Guideline revision was specifically intended to address circuit conflicts that had arisen over "the mental state required" for the 5-level enhancement, with the Commission noting that conflicts had "arisen frequently, although not exclusively, in cases involving the use of peer-to-peer file-sharing programs or networks." 2016 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, U.S. SENTENCING COMM'N (Apr. 28, 2016), at p. 9–10; *see also id.* at 12. The Commission explained that the new language applies to a defendant who "*agreed to an exchange with another person* under which the defendant knowingly distributed to that other person *for the specific purpose* of obtaining something of valuable consideration *from that other person*, such as other child pornographic material, preferential access to child pornographic material, or access to a child." *Id.* at 12 (emphasis added); *see also* § 2G2.2 cmt. n. 1 (same).

Following the Guideline amendment, this Court held that the new test for applying the 5-level enhancement requires the district court to find that:

(1) the defendant agreed to an exchange with another person;

(2) the defendant knowingly distributed child pornography to that person;

(3) for the purpose of obtaining something of valuable consideration; and

(4) the valuable consideration came from that person.

14

*Halverson*, 897 F.3d at 652. This Court made clear in *Halverson* that, contrary to prior precedent, the use of peer-to-peer file sharing software is not sufficient. *Id.* at 651. The Court also made clear that the government "must prove that valuable consideration came from the person to whom the defendant distributed child pornography." *United States v. Dedual*, 760 F. App'x 339, 340 (5th Cir. 2019) (unpublished) (citing *Halverson*, 897 F.3d at 651–52).

The district court erred in its analysis and application of the enhancement because it did not make the necessary findings under the *Halverson* test. The court found that the government had established by a preponderance of the evidence that Mr. Boyet "distributed child pornography with the specific purpose of obtaining something of valuable consideration in return, namely, other child-pornographic material and preferential access to child-pornographic material." ROA.1100. As discussed below, that conclusion was not supported by the evidence presented—but even if it were, it does not satisfy the *Halverson* test. More is required.

The government had to prove that Mr. Boyet entered a specific agreement with a specific person to make an exchange and, furthermore, that an exchange between Mr. Boyet and that person was actually made. *See Halverson*, 897 F.3d at 652. A finding that Mr. Boyet sent images "with the specific purpose" of receiving other material in return is not enough under the revised Guideline. In fact, the court's finding reflects the *old* version of the Guideline and the precise language that was

removed: an "expectation of receipt." And, of course, the mere use of a messaging application that *allows* users to exchange child pornography is insufficient. *See United States v. Furzland*, 751 F. App'x 568, 569 (5th Cir. 2019) (unpublished) (vacating a judgment and remanding for resentencing based on the erroneous application of § 2G2.2(b)(3)(B)).

The Fourth Circuit—which has adopted the same test articulated in *Halverson*—recently found reversible error in an analogous situation. *See United States v. Morehouse*, 34 F.4th 381, 386–94 (4th Cir. 2022). In *Morehouse*, the defendant shared child pornography on chat messaging platforms, admitting that he did so "in order to receive other child pornographic images and videos" from other users. 34 F.4th at 386. The district court applied the distribution-for-value enhancement, finding that the defendant's concession "that he performed the *act* of distribution *in order to* receive more child pornography" satisfied the Guideline.[4] *Id.* at 387. The Fourth Circuit reversed, holding that, although the defendant's admitted intent satisfied the *previous* version of the enhancement, it did not satisfy the revised version. *Id.* at 388–90.

In explaining its ruling, the Fourth Circuit addressed the differences between an "expectation of receipt" (from the previous version of the enhancement) and "exchange" (from the new version). *Id.* at 390. The court explained:

---

[4] The district court had incorrectly applied the circuit's pre-amendment test.

> [A]n "expectation" that distributing child pornography will lead to the receipt of further child pornography could be reasonable because one is in communication with a specific individual, but that is not a requirement—*rather, the expectation could arise from the general practices of the program or website one is using.*

*Id.* (emphasis added). In contrast, "[t]he plain meaning of an 'exchange' is a trade," and "[a] trade generally implies the existence of another, specified party with whom one has formed an agreement to make an exchange." *Id.* In other words, the revised text "makes plain that another party must be actively involved in an exchange with the defendant." *Id.* Comparing the previous and current versions of the enhancement, the Fourth Circuit further elaborated:

> As we understood the enhancement [prior to the amendment], it could involve a one-sided endeavor in which a defendant made child pornography available (whether to a specific person or to the world at large) in the expectation that he would receive more child pornography in return (whether from a specific person or from other, unidentified users). Under the 2016 amendment, however, the enhancement can only apply to a two-sided exchange. It requires the Government to show that the defendant entered an agreement with a specific individual that the defendant would provide child pornography to that person in exchange for valuable consideration, such as additional child pornography.

*Id.* at 391 (citations omitted).

Applying the revised Guideline to the facts in *Morehouse*, the Fourth Circuit held that the district court procedurally erred in applying the enhancement because the defendant's admissions only satisfied the third prong and part of the second prong of the revised test—*i.e.*, the knowing distribution of child pornography for the

purpose of obtaining something of valuable consideration. *Id.* at 393. "But crucially, entirely absent from the district court's conclusions is the notion that [the defendant] made *any* type of agreement with a specific person, as required to fully satisfy the first, second, and fourth prongs." *Id.* (emphasis in original). The Fourth Circuit likewise found that "the fact that [the defendant] *actually received images in return* for his overtures" was "insufficient to sustain the government's burden by a preponderance of the evidence," because that does not prove that the defendant "*agreed to an exchange* or received images *from the person he entered into the agreement with.*" *Id.* at 393 n.12 (emphasis in original).

The same is true here. The government did not present any evidence that Mr. Boyet made any type of agreement with a specific person to exchange pornographic materials, much less that he sent images or videos pursuant to such an agreement. Nor did it present evidence that any of the images or videos Mr. Boyet *received* while participating in the chat groups were provided by a person with whom he entered into any agreement. The district court's conclusion mirrors the outdated version of the statute, finding that a general goal or intent of receiving pornographic material by sharing one's own material qualifies for the enhancement. As the Fourth Circuit recognized in *Morehouse*, that is plainly insufficient under the revised Guideline. And, as in *Morehouse*, the fact that Mr. Boyet received materials from

other users, either before or after sending pictures himself, is likewise insufficient to prove that he made an agreement to exchange material with a specific person.

The Sixth Circuit has similarly made clear that "the defendant's purpose [in distributing CSAM] cannot be the *only* factor a court considers." *United States v. Oliver*, 919 F.3d 393, 404 (6th Cir. 2019) (emphasis in original). In *Oliver*, the government argued that the enhancement should apply to a defendant because he "sent child pornography to [an] undercover agent for the 'specific purpose' of gaining access to the agent's minor child or to receive pictures or videos of the child." *Id.* at 401. The Sixth Circuit stated that the government's focus on the defendant's "specific purpose" and culpability "ignores the other, unambiguous requirements of the enhancement," explaining that an "exchange" is "more exacting" than a mere expectation or anticipation of receipt and requires "an agreement or mutual understanding *between two parties*." *Id.* (emphasis added). In other words, "the [defendant's] distribution must be part of, or in support of, the defendant's *obligations* under [an] *agreement with another person*." *Id.* (emphasis added). The Guideline's requirements "necessarily include[] some kind of discussion or understanding between the defendant and the 'other person' regarding the contours—whether explicit or implicit—of the agreement." *Id.*

Here, the district court procedurally erred in applying the enhancement because it relied solely on its conclusion about Mr. Boyet's purpose in sharing

19

pictures in the chat groups. As the Sixth Circuit explained in *Oliver*, a defendant's "unilateral purpose or belief cannot, by itself, control." 919 F.3d at 405. "If a defendant's specific purpose could definitively and exclusively show an implicit agreement [to an exchange], there would be very little reason to require both elements." *Id.* Accordingly, the district court's judgment must be vacated and the case remanded for resentencing.[5]

The above ends the inquiry. However, out of an abundance of caution, Mr. Boyet further notes that the court also *factually* erred in concluding that he shared images for the specific purpose of receiving other child pornography because that conclusion is unsupported by the evidence. The PSR reported that the chat room used by Mr. Boyet "required an individual seeking entry to post a file depicting the sexual victimization of children to gain entrance." ROA.522. But, as defense counsel noted below, there was "no evidence that the chat room actually required the posting of a file depicting the sexual victimization of children to gain entrance," nor was there any evidence "to establish that Mr. Boyet [actually posted] a photo depicting the sexual victimization of children for entry or any other type of gain." ROA.503

---

[5] This case is in stark contrast to cases where other courts have found sufficient evidence of a specific agreement to exchange illicit material. *See, e.g.*, *United States v. Hennings*, 23 F.4th 820, 823 (8th Cir. 2022) (defendant told another user in a messaging application that he no longer shared links to child pornography but would send "a short video or two" in exchange for a photo of the other user's chest or penis, and he sent the user child pornography after receiving a photo); *United States v. Traufield*, 768 F. App'x 802, 808 (10th Cir. 2019) (defendant asked another user in a chat log, "Want to trade?," and exchanged passwords with a user to access each other's files).

(further stating that Mr. Boyet "vehemently denies having done so"). Moreover, the government did not dispute the defense's assertion that distribution was not a requirement of admission, stating that it took no position on the objection related to the "precursor to accessing chat room." ROA.511. Thus, there was no evidence that Mr. Boyet shared pictures "with the specific purpose" of gaining "preferential access to child-pornographic material," as the court concluded.

Likewise, the evidence did not support the district court's conclusion that he shared any CSAM "with the specific purpose" of obtaining other CSAM. Although the government cited four examples of sequential distributions by Mr. Boyet and other users, those examples do not show that Mr. Boyet's goal in transmitting CSAM was to obtain child pornography in return. As described in the FBI report, the messaging application was a place where users routinely shared and discussed child-pornographic materials. *See* ROA.559–60. In other words, while the evidence may have shown that distribution of pictures was a general practice or feature of the chat groups, it does not establish that Mr. Boyet sent material for the specific purpose of receiving other material, much less that he entered into an agreement to make such an exchange. Indeed, as defense counsel noted below, two of the examples cited by the government began with Mr. Boyet *receiving* material—making it impossible to conclude that he subsequently distributed material to the user "for the purpose of *obtaining*" material that was already in his possession. ROA.553–55; ROA.880–82.

A third example involved Mr. Boyet and a user independently sending material to a large group chat, and the fourth indicated that Mr. Boyet received a private video more than 15 hours after he sent an image that does not legally qualify as child pornography to an unspecified recipient(s). *Id.*

Thus, as defense counsel argued, none of the government's evidence satisfied the *Halverson* test, nor did it prove—as the court incorrectly concluded—that Mr. Boyet sent child-pornographic material for the specific purpose of receiving other child-pornographic material. Accordingly, for this additional reason, the district court's ruling on the distribution-for-value enhancement must be reversed.

## II.    The district court abused its discretion by broadening the cohabitation restriction to include a dating restriction in the written judgment.

### A. *Standard of Review.*

"When a defendant had no opportunity to object to special conditions (because they were unmentioned at sentencing), [this Court] review[s] for abuse of discretion, and any 'unpronounced' special conditions must, upon remand, be stricken from the written judgment." *United States v. Rivas-Estrada*, 906 F.3d 346, 348 (5th Cir. 2018); *see also United States v. McGinnis*, 956 F.3d 747, 760–61 (5th Cir. 2020) (stating that this Court "reviews oral-pronouncement claims for abuse of discretion when the defendant had no opportunity to object"). Neither the PSR nor the court's oral pronouncement mentioned a restriction on dating as part of the cohabitation restriction. Accordingly, this Court's review is for abuse of discretion.

**B. The district court abused its discretion by issuing a written judgment that conflicted with its oral pronouncement, requiring correction.**

"The district court's obligation to orally pronounce its sentence is grounded in the defendant's right to be present at sentencing, which in turn is derived from the Sixth Amendment and the Due Process Clause." *McGinnis*, 956 F.3d at 761. "[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls." *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001); *see also United States v. Vasquez-Puente*, 922 F.3d 700, 703 (5th Cir. 2019) (same). "In such cases, the written judgment must be returned to the district court and 'reformed to conform to the oral sentence.'" *McGinnis*, 956 F.3d at 761 (quoting *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006)); *see also, e.g.*, *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006) ("If a conflict exists, the appropriate remedy is remand to the district court to amend the written judgment to conform to the oral sentence."); *United States v. Watts*, 834 F. App'x 907, 915 (5th Cir. 2020) (unpublished) ("This court has held that any unpronounced special conditions must be stricken from the written judgment on remand to the sentencing court."); *Rivas-Estrada*, 906 F.3d at 348 (same).

This Court previously has held that the precise modification at issue here creates a conflict between the oral pronouncement and written judgment, requiring vacatur of the dating restriction. *See United States v. Tang*, 718 F.3d 476, 486–87 (5th Cir. 2013). Here, just like in *Tang*, "the oral pronouncement conflicts with the

written judgment by adding a new restriction, as cohabitation generally concerns [Mr. Boyet's] residential life and dating generally concerns [his] social life." *Id.* at 487 (citations omitted); *see also Mireles*, 471 F.3d at 558 ("If the written judgment broadens the restrictions or requirements of supervised release from an oral pronouncement, a conflict exists.") "Accordingly, the district court abused its discretion by including an additional restriction in the written judgment that was not part of the oral pronouncement of sentence." *Id.* The written judgment must therefore be revised.[6]

---

[6] The government previously has declined to enforce an appeal waiver when there was a conflict between the oral pronouncement and written judgment. *See United States v. Woods*, 799 F. App'x 284, 285 (5th Cir. 2020) (unpublished). If the government seeks to enforce the appeal waiver here, the Court should still reach the merits of this issue because the imposition of the discretionary dating restriction without oral pronouncement not only violated Mr. Boyet's constitutional rights, but it also exceeds the statutory maximum sentence under 18 U.S.C. § 3583. Section 3583(d) only permits courts to impose additional, discretionary conditions of supervised release that are reasonably related to certain statutory sentencing factors, involve no greater deprivation of liberty than reasonably necessary for deterrence, public protection, and rehabilitation, and are consistent with applicable policy statements. The district court provided no explanation for how the dating restriction satisfies these conditions, nor is there any evidence in the record indicating that the dating restriction—as opposed to a cohabitation restriction—is reasonably related to the applicable sentencing factors or reasonably necessary to achieve the applicable sentencing goals. Thus, the provision exceeds Mr. Boyet's statutorily authorized sentence, making this challenge fall within the "statutory maximum" exception to the appeal waivers. *See, e.g.*, *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020) (explaining that supervised release conditions "must be tailored" to the statutory considerations); *United States v. Woods*, 547 F.3d 515, 517 (5th Cir. 2008) (explaining that a court "abuses its discretion when it imposes a discretionary supervised release condition that deviates from the requirements defined in § 3583(d)"). Alternatively, this Court could remand for correction of the written judgment pursuant to Fed. R. Crim. P. 36, as the broadening of the restriction to include dating could also be construed as a clerical error. *See United States v. Sanghavi*, 776 F. App'x 248, 249 (5th Cir. 2019) (unpublished).

## CONCLUSION

Wherefore, for the foregoing reasons, Mr. Boyet respectfully requests that this Court vacate his judgment and remand his case for resentencing or, alternatively, remand the case with instructions to modify the cohabitation restriction in his conditions of supervised release to conform with the oral pronouncement.

Respectfully submitted,

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 24, 2022, the foregoing Appellant's Brief was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing Users:

> Kevin G. Boitmann, kevin.boitmann@usdoj.gov,
> Diane Hollenshead Copes, diane.copes@usdoj.gov, and
> Jordan S. Ginsberg, Jordan.ginsberg@usdoj.gov,
>     Assistant United States Attorneys.

"The court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users." 5TH CIR. R. 25.2.5.

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font for text and 12-point font for footnotes.

3.    This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1, because it has been redacted of personal data identifiers.

4.    This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5.    This brief is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: June 24, 2022